## Case No. 6,936.

### HURST v. McNEIL.

[1 Wash. C. C. 70.] [1]

Circuit Court, D. Pennsylvania.  April Term, 1804.

EJECTMENT—DEED OF LEASE AND RELEASE—FORMER JUDGMENT—EVIDENCE—NOTICE—LENGTH OF TIME.

1. The freehold estate which vests in a relessee, under deed of lease and release, by enlargement, is an estate at common law, which did not require the aid of the statute of uses to execute the possession to the use.

2. The mere calling a deed of trust, mentioned in the recitals of other deeds, a deed of trust, does not render it so.

[Cited in Stillman v. White Rock Manuf'g Co., Case No. 13,446.]

3. The record of a trial, and verdict against the plaintiff, in a suit brought by him against another person; cannot be given in evidence by another defendant.

[Cited in Smith v. Kernochen, 7 How. (48 U. S.) 216; Barney v. Baltimore City, 6 Wall. (73 U. S.) 288.]

[Cited in Alexander v. Walter, 8 Gill. 250; Byers v. Fowler, 12 Ark. 286; Tams v. Bullitt, 35 Pa. St. 311; St. Louis Mut. Life Ins. Co. v. Cravens, 69 Mo. 73.]

4. The doctrine of a purchaser without notice, applies only to equitable rights, where a legal title is obtained, without notice of a prior equitable title; when the former will prevail in equity, if fairly acquired.

[Cited in Nulsen v. Wishon, 68 Mo. 387.]

5. In the case of legal titles, the rule is caveat emptor.

6. Length of time cannot be presumed by a jury, but must be proved.

7. Length of time may properly induce a jury to presume a grant in support of such possession; which presumption may be repelled, or accounted for.

8. The assent of the grantor to a deed, clearly for his benefit, may be presumed; yet if a con-

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters. Jr., Esq.]

sideration is to be paid, the assent must be proved, or nothing passes by the deed.

[Cited in Boone v. Chiles, 10 Pet. (35 U. S.) 212.]

[Cited in Peavey v. Tilton, 18 N. H. 152; County of Wayne v. Miller, 31 Mich. 450.]

9. A deed executed for the purpose of giving jurisdiction to the federal court, will not be countenanced so as to sustain the jurisdiction.

[Disapproved in Briggs v. French, Case No. 1,871.]

Ejectment for one undivided fourth part of 5,000 acres of land in Chester county. [A similar suit was brought in Case No. 6,927, and a motion for attorneys' fees was passed upon in Case No. 6,928.] The plaintiff's title was as follows:—September 4th and 5th, 1682, William Penn, the first proprietor, by deeds of lease and release, conveyed to Sir John Fagg 50,000 acres of land, to be thereafter located in Pennsylvania, to him, his heirs and assigns; in trust, as to one-half thereof, to the use of his son William Penn; and as to the other, to his daughter, Laetitia Aubrey; both children of his first marriage. This deed not produced, being lost, but sufficiently proved, as the plaintiff [Hurst's lessee] insisted, by recitals in subsequent deeds. Some years after this, but when does not appear, five thousand acres, part of the above fifty thousand acres, were surveyed in Chester county, without saying for whom, but endorsed "Wm. Penn's Manor." This is the land in question. In 1716, William, the second, died intestate, leaving Springett. his eldest son, William, Gulielma, and Maria, who afterwards married Mr. Fell. By the intestate law of Pennsylvania at that time, the eldest son took one-half, and the second son and the daughters, one-fourth each. 24th January, 1730, Springett, by will, devised his half to his brother, William, the third, who thereby became entitled to three-fourths of his father's estate. 10th February, 1740, a warrant issued to re-survey William Penn, Jun.'s. Manor; which was done, June, 1741, and found to contain five thousand acres, endorsed "Wm. Penn's Manor." This was accompanied with a list of the settlers on this manor, amongst which is found the name of William Porter. Mr. Fell died intestate, leaving three children, Robert Edward, Mary M., who afterwards married John Baron, and Gulielma Maria Frances, who married Mr. Newcum. Mr. and Mrs. Baron, in February, 1768, conveyed their interest to Crispin, who re-conveyed to John Baron in fee. In 1770, Robert Edward Fell and Mrs. Newcum, by their attorney, and in consideration of £4,500, conveyed to Timothy Hurst all their lots and lands in South street in Philadelphia, and all other their lands in Pennsylvania, and elsewhere in North America. 15th January, 1774, Timothy conveyed to Charles, Thomas, and John Hurst. in fee, as tenants in common, all his lands in America. 2d December, 1783. Charles

Hurst, as attorney in fact, under a power from Thomas and John, and in his own right, conveyed all the above lands to Clement Biddle; and the next day, received a re-conveyance of the same; and on the 8th September, 1791, Charles Hurst and John Baron conveyed to the lessor of the plaintiff, a British subject.

Defendant's title: 4th May, 1742, William Penn, the third, who was only entitled, under the law of Pennsylvania, to three-fourths of the five thousand acres, reciting the deed to Sir John Fagg, (ut supra) conveyed the whole of Penn's Manor to John White, in fee. In this deed, he styles himself heir at law of William Penn, the second; and covenants that he has a right to convey, &c. 12th December, 1747, a patent was granted for these five thousand acres of land, to John White, by the then proprietors, Thomas and John Penn. 12th February, 1753, White, by attorney, conveyed 298½ acres, part of Penn's Manor, to William Porter, in fee; who, by will, dated 26th May, 1781, devised the same to the defendant.

The Attorney General (Mr. M'Kean,) moved to nonsuit the plaintiff, on the ground that the deed to Sir John Fagg conveyed to him the legal estate, and that the estate of William Penn, the second, and Laetitia, was a mere trust, not executed by the statute; and of course, that the plaintiff, if he be entitled, must assert his right in a court of equity. The plaintiff cannot, against the express words of the various recitals, from which alone the deed to Sir John Fagg is established, say, that this was not a trust estate, when those recitals declare the contrary. It is clearly to be inferred, that the conveyance was not only to Sir John Fagg, his heirs and assigns, but the usual words added, "to his only use and behoof, in trust." &c.; in which case, the statute would only execute the first use in Fagg. The lease to Fagg, which was no doubt by bargain and sale, most certainly passed only a use to him; and if a second use had been declared, the statute would not have executed the second use. The release, then, only enlarged that estate to an estate in fee, without changing its nature; and therefore, only the first use to Fagg and his heirs was executed by the statute, leaving the second use a mere trust estate. Cases cited by Edward Tilghman, and Mr. Rawle, who supported the motion: 1 Eq. Cas. Abr. 383; Doug. 709; 2 Bl. Comm. 335, 336, 339; 2 Wood. El. Jur. 301, 296.

Lewis & Ingersoll, against the motion: The plaintiff may recover either on the warrant and survey, which, by the decisions of the Pennsylvania courts, and by that of the supreme court of the United States, are determined to give a legal right of entry, which is sufficient in ejectment; or under the deed to Sir John Fagg, which conveyed a use to the children of William Penn, executed by

the statute. The general scope of the statute was to execute all uses and trusts; for both are mentioned; and those which were not considered to be executed, were exceptions made by construction, by the subsequent decisions of the courts of law and equity. Those were terms for years, double uses, and cases where it was necessary for the trustee to retain the possession, to enable him to execute the trusts. If this case comes within either exception, the defendant must show it. The conveyance by lease and release to A, to the use of B, to the use of C, passes but one use. Cases cited: 2 Bl. Comm. 332, 335, 336, Christian's note; 2 Wood. El. Jur. 296, 297, 294.

The answer to the title set up under the warrant and survey, was, that this doctrine only applied where they formed the inception of title; aliter of another estate, as in this case, had been created prior to the survey.

Ingersoll & Lewis, for plaintiff.
M'Kean, Atty. Gen., Edward Tilghman, and Mr. Rawle, for defendant.

WASHINGTON, Circuit Justice. The distinction laid down by the defendant's counsel, seems to be a rational and sound one. There is certainly a difference between a title derived originally under a warrant and survey, and one under a prior deed from the proprietor; in which case the warrant and survey seem rather intended to locate and ascertain the land granted, than to pass an estate. But upon this point, we give no positive opinion, as we are against the motion upon the other point. A lease at common law, required the actual entry of the lessee, to enable him to receive a release to enlarge his estate. But after the statute of uses, this formality was rendered unnecessary; because, the lease being made by a deed of bargain and sale, the lessor stood seised to the use of the lessee for a year; and the statute, by executing the possession to the use, put the lessee in possession, and enabled him to receive a release. But the freehold estate, which became thus vested in the releasee by enlargement, is an estate at common law, which did not require the aid of the statute to execute the possession to the use; and therefore an estate conveyed by lease and release to A and his heirs, to the use of A and his heirs, to the use of B and his heirs, is no more within the statute of uses as to the estate of A, than if it had passed by feoffment; and consequently, the first to be executed, would be that to B. There is, therefore, no second use in such a case. But if the conveyance be by bargain or sale, or covenant to stand seised, the statute executes the first use, which is distinct from the possession of the bargainor or covenantor, which remained in him, and required the aid of the statute; and consequently, the second use was supposed not

to be executed, but remained a trust. This doctrine, if my memory serves me, is well explained by Hargrave, in his notes to Coke on Lyttleton.

But it is contended, that the recitals in the various papers relied on to establish this deed, denominate this a trust, which the plaintiffs cannot now deny. No person can doubt that the intention of the statute of uses was to leave no cases of trusts unexecuted. But the common law courts having unfortunately determined, that in three cases, the use remained as at common law; the courts of equity very readily, and in my opinion very properly, laid hold of those decisions, treated such cases as exceptions from the statute, and entertained jurisdiction over them, as they had done over all trusts before the statute.

We must therefore consider them as exceptions; and when we hear of a trust estate, it is to be understood a use executed, unless it appear to be a case coming within one of the exceptions. There is no magic in the word trust, any more than in the word use—they were controvertible terms before the statute, and still are so, except distinguishable by the subject matter of them.

Motion overruled.

In the further progress of the cause, the defendant's counsel offered to read the record of a trial between the present lessor of the plaintiff, and Pemberton; respecting part of the five thousand acres; which was objected to, by the plaintiff's counsel.

WASHINGTON, Circuit Justice. Such evidence is inadmissible. If there be a point completely settled, and at rest, it is this; that a verdict between different persons cannot be given in evidence, in a suit of one of the parties against a stranger. It is true, that in that case, Hurst, against whom the verdict is offered, had an opportunity of cross-examining; yet it cannot be offered against Hurst, unless he might have offered it, had it been in his favour. This is the settled rule. Non constat that the evidence necessary, or supposed necessary by Hurst, in that case, was the same as in this. He might have been unsuccessful there, for many reasons which do not now exist—the absence of witnesses. or the like.

Cases cited by defendant's counsel: Car. 181; Gilb. Ev. 33–69.

Jonathan H. Hurst was examined as a witness, who proved that when Charles Hurst executed the deed to the lessor of the plaintiff. the latter was in England, and had no agent present—that no person was present, but the grantor and the witnesses; nor did any consideration, or security for the consideration, (mentioned in the deed as the consideration,) pass.

It further appeared in evidence, that Kirkbride, the executor of Robert E. Fell, having instituted a suit to foreclose a mortgage given by Timothy Hurst on the South street lots, for securing the consideration money to be paid him; a settlement took place between the parties, by their attorneys, when some allowance was made to Hurst for certain estates in Pennsylvania, which he had been prevented from recovering under the deed from Fell; but none was made on account of Penn's Manor.

After the decision of the court upon the motion to nonsuit, the defendant accidentally heard that the deed to Sir John Fagg was in the city; and he produced, before the argument had closed, a deed to Sir John Fagg, dated 5th September 1682, from William Penn, for fifty thousand acres, but without declaring any uses to William Penn and Laetitia.

The ground relied upon by the plaintiff, was, that by the death of William Penn, the second, intestate, one fourth of the five thousand acres of land descended to Mrs. Fell, which has been regularly passed by the lessor of the plaintiff. That the conveyance of William Penn, the third, to John White, could only pass his right, which was to three-fourths of the five thousand acres.

WASHINGTON, Circuit Justice, asked the plaintiff's counsel if the conveyance to Timothy Hurst, during the adverse possession of Porter, could pass a valid title by the laws or decisions of this state; and if an alien could take and hold lands here.

Edward Tilghman, for defendant, admitted that it had so frequently been ruled in the supreme court, and other courts of this state; that a conveyance of land, where at the time there was an adverse possession, is good to pass the estate; that he could not question the plaintiff's title on this ground. Also, that at the time the conveyance was made to John Hurst. an alien could purchase and hold lands in Pennsylvania.

The defendant's counsel objected to the plaintiff's title on the following points:—First. That it is not to be believed that Mr. Fell and Mrs. Newcum could have intended. by the general words in the deed to Hurst, to convey more than the South street lots, for the trifling consideration of £4,500. That if the jury should be of opinion that this was the intention of the parties, the intention must prevail; and they cited 1 Term R. 701; Cowp. 9. The price being outrageously low, is clear evidence of a fraud. 1 Ves. Jr. 219. Second. That Hurst received compensation for all the lands, except the South street lots, in the compromise made with Kirkbride, the executor of Fell. Third. That after so great a length of time, and so long an acquiescence on the part of Fell, the jury are at liberty to presume a possession long enough to bar the plaintiff; or that Mrs. Fell parted with her right to her brother William Penn, the third. Cases cited, 2 Inst. 118; 12 Rep. 56; 3 Bl. Comm. 188; 1 Eq. Cas. Abr. 306; 2 Atk. 71, 67; Skin. 77; 2 Vern. 391; Cow. 108, 214, 218; Bull. N. P. 75; 2 Atk. 83; 9 Mod. 37; 1 Ld. Raym. 389;

Salk. 421; 1 Brown, Ch. 554; 2 Ves. Jr. 583; 13; 2 Burrows, 961, 2023; 3 Term R. 310; Cowp. 108, 109; 3 Atk. 629; 4 Term R. 683. Fourth. That this court has no jurisdiction, as the deed from Charles to John Hurst, under all the circumstances of the case, was undoubtedly a fictitious conveyance, and intended to give jurisdiction, whilst Charles Hurst remains the real, and John merely a nominal, plaintiff. Besides, it now appears by the deed to Sir John Fagg, that the legal estate vested absolutely in him, and that no uses whatever were declared. Cases cited, Maxwell v. Levy [Case No. 9,321], where the circuit court, on proof that the conveyance was merely to give jurisdiction, struck the cause off the docket. 2 Bl. Comm. 296. Assent to a deed by grantee necessary. Shep. Touch. 283.

For plaintiff on first point: That no evidence or presumption can be offered to contradict, or vary the general expressions of the deed. It was a land lottery, and at that time it was impossible to say, whether the consideration was too high or too low. Second. The argument of compensation, is repelled by the testimony of Fisher. Third. Admit that where a deed appears which would be invalid, without certain formalities, as seisin, surrender, or the like; the jury may in favour of a long uninterrupted possession presume them; but it is going too far to presume a conveyance from Mrs. Fell, or an agreement to sell to her brother, without the slightest evidence. The presumptions relied upon in this case are completely repelled. Fourth. John Hurst had certainly an equitable interest in this land, and if Charles Hurst conveyed the legal estate to him, it does not affect the jurisdiction of this court.

WASHINGTON, Circuit Justice (charging jury). After stating the plaintiff's, and then the defendant's title, observed that the former was regularly deduced down to the lessor of the plaintiff, whereas the defect was obvious in that of the defendant, since it was derived from William Penn, the third, who was entitled to only three-fourths of the five thousand acres of land, and consequently could convey no more to White. But objections have been made to the plaintiff's right of recovery, and if they or any of them should be sustained, the verdict must be for the defendant; notwithstanding the defect in his title.

The first objection made to the plaintiff's title was, that it appears from the smallness of the consideration, that it was not the intention of Fell to convey any thing more than the South street lots. That being a resident in Great Britain, it is hardly probable he knew that he was entitled to a part of Penn's Manor, and many other manors in Pennsylvania, which were mentioned by some of the witnesses, and to which Hurst has laid claim. That it appears Hurst was much better acquainted with the rights of the Fell family than they were, and it was a fraud in him, to throw in the general sweeping words contained in the deed to him, without disclosing to them his knowledge.

Answer—We must judge of men's intentions, in solemn acts of this kind, by the language they use. If they are clear of ambiguity, there is no room left for construction, and we must give effect to the words which are employed to convey their meaning. If nothing is to pass under the deed to Timothy Hurst, but the South street lots, then the descriptive words of other property must be rejected altogether, and if any operation whatever is to be given to them, where can we stop, or by what rule can we limit them? Can we obliterate the words, "and all other their parts of land in Pennsylvania, or elsewhere in America," or say that they did not mean to pass away such rights, if they possessed them? This doctrine can never be tolerated. There is no evidence of fraud on the part of Hurst; and the whole argument is bottomed on surmises and conjectures. It was said by the counsel for defendant, that White and Porter were fair bona fide purchasers, without notice of the claims of Fell. But this doctrine only applies to equitable rights, where a legal title is obtained without notice of a prior equitable title, in which the former shall in equity prevail, if acquired fairly for valuable consideration, and without notice of the latter. In this case, the title of Mrs. Fell was a legal title, and therefore as to White, the principal caveat emptor applies in all its force.

Second objection. Hurst has been satisfied in the compromise made with Kirkbride.

Answer—This is completely negatived by the evidence of Mr. Fisher, who declares that no compensation was made for the claim of Hurst to any part of Penn's Manor.

Third. The next objection goes not only to the destruction of the plaintiff's right, but in affirmance of the defendant's, and upon this point the cause must turn. It is argued that the jury may presume a length of possession sufficient to create a bar, or if not so, that Mrs. Fell parted with her right to William Penn, the third.

I do not admit that length of time can be presumed. If the defendant relies upon it as a bar, he must prove it by some evidence either positive or circumstantial, so as to satisfy the jury of the fact. No evidence in this case has been given of a possession prior to 1741; and the jury therefore, cannot extend it by presumption.

But the jury may presume a deed from Mrs. Fell, or some other agreement between her and William, the third, by which she passed to him her fourth part of Penn's Manor. This presumption, if warranted by such evidence as will satisfy your minds that the fact existed, may be made in favour of this long and quiet possession under William Penn. But those circumstances may be ac-

counted for, and repelled; and after weighing all the evidence, you must decide which preponderates.

The circumstances relied upon to induce the presumption are, the long acquiescence of the Fell family, from the year 1716, when William Penn, the second, died, until 1774, when Robert Edward Fell and his sister sold to Hurst; during all which time no claim was made, or any attempt to exercise any act of ownership over the land in question. The good character of William, the third, and the consequent improbability that he would convey away the rights of his sister. The strong covenants in his deed to White, demonstrating the confidence he felt in his right to convey the whole. That this being a family transaction, the probability that some agreement was made with Mrs. Fell, is stronger than if the right had belonged to a stranger. Thomas Penn, the proprietor, who granted a patent for this five thousand acres of land to White, was also the guardian of the young Fells; and it is scarcely possible that he was ignorant of their rights, if they had been parted with. If they had not, that he would have united in conveying them away; on the contrary, it is to be supposed that he would have taken proper steps to assert and secure them for his wards.

The plaintiff answers these circumstances in the following manner. William, the third, as well as his sister, lived in England. He knew that by the laws of England, he was entitled by descent to the whole of his father's real estate, as heir at law; and that he claimed it in that right, appears from the deed to White, in which he styles himself heir at law; it is hardly probable that he knew of the intestate law of Pennsylvania. He either knew of his sister's right to one-fourth, or he did not. If the former, and he had purchased it from her, then he would have thought it as necessary to state the fact, so as to show his right to that fourth, as he did to set out the right under which he claimed the three-fourths. If the latter, then he never could have purchased it. As to the long acquiescence on the part of the Fell family; this was accounted for by the residence of that family in Great Britain; their ignorance probably of their rights; the little value of the property at that time; and the policy of the proprietors in encouraging settlers on their lands, instead of making attempts to disturb them. That as to the patent to White, from Thomas Penn, this proves nothing; as it was a mere office conveyance in the name of the proprietors, but by their lieutenant-governor in this province, the proprietors themselves living abroad.

I was much struck with the expression in the deed to White, where William Penn styles himself heir at law; which seemed to show that he had mistaken or was ignorant of the law of Pennsylvania, and claimed the whole, not by purchase of his sister's fourth, but in character of heir at law. It is however to be remarked, that William did not claim three-fourths as heir at law to his father; because Springett was heir at law, and as such was entitled to one-half, which by his will he devised to his brother. But after the death of Springett, without issue, William acquired the character of heir at law to his father; and therefore, when he styles himself such in the deed to him, it is rather to be considered as a descriptio personae, than as a description of his title. It was also argued by the defendant's counsel, that when the great family settlement between the descendants of the first William Penn was made in 1731, it is highly probable, the counsel who were employed on that occasion had informed themselves of the law of Pennsylvania, and would then have discovered Mrs. Fell's right.

The jury will weigh the circumstances relied upon to warrant the presumption, and the answers which have been given to them. If they, upon their oaths, feel satisfied that Mrs. Fell did, in some way or other, convey away her right to William, the third, they will find for defendant; otherwise, for the plaintiff, unless the remaining objections be against him.

Fourth. This objection is to the jurisdiction of the court. By the deed of the 15th January, 1774, from Timothy Hurst; Charles, Thomas, and John, became entitled to the land therein conveyed, as tenants in common. The deed from Charles Hurst to Biddle, and the re-conveyance to Charles, vested the legal estate in this land in Charles; but John and Thomas, it is admitted, were not thereby divested of their rights in equity. though they might be in law. Now the deed to John Hurst was meant to be a real deed, or was merely fictitious, and intended to enable John Hurst to sue in this court. If the former, it was void; as the assent of the grantee was not given at the time, nor has it ever been since given: for though the assent of a grantee to a deed, clearly for his benefit, may be presumed; yet, if a consideration is to be paid, as in this case, (£1,000 is mentioned,) the assent must be proved, or nothing passes by the deed. If it was not meant as a real conveyance, then it may operate to pass to John Hurst a legal title to his own third, which had become vested in Charles, but to which John still retained an equitable title. As to any thing more, the deed cannot be supported; because, as to the rights of Charles and Thomas Hurst and John Baron, they remain unaffected by the deed to John; and being merely a fictitious thing, to give jurisdiction to this court, it will not receive our countenance.

As to the deed to Sir John Fagg, which has been produced, it is either not the deed so frequently recited in the title papers which have been read, or there was some other deed executed on the same day, declaring the uses in the fifty thousand acres of land

to William Penn, the second, and Mrs. Aubrey. This, therefore, forms no objection to the plaintiff's title.

Jury found a verdict for defendant.

[In Case No. 6,940 a motion for a continuance on the ground of improper publication was denied.]