# MUSCOGEE SUPERIOR COURT.

### April Term, 1842.

THE PLANTERS' AND MECHANICS' BANK OF COLUMBUS vs. WILLIAM
S. CHIPLEY, LEROY M. WILEY, AND OTHERS.

*Petition for Certiorari in Muscogee Superior Court.*

1. The Justices' Courts of Georgia are not Courts of Record.

2. Several suits cannot be commenced by the same plaintiff, against the same
   defendant, at the same time, in a Court, not of Record, on several causes of
   action, which, in the aggregate, exceed the jurisdiction of such Court.

3. Parties cannot, with a view of giving Justices' Courts jurisdiction of a debt
   exceeding thirty dollars, divide it into smaller sums, though payable on different
   days. The Act of 1811, which authorizes it, is violative of the Constitution of
   1798, under which it was passed, and therefore void.

4. A debt, originally exceeding thirty dollars, and reduced to that sum, by actual
   payments, may be sued in a Justice's Court.

5. Parties to a debt, above thirty dollars, may sever it, for the purpose of negotiating
   a part, or parts of it, and for the purpose of giving different days of payment, so
   that the same be not done with a view to defeat the Constitution ; and when so
   severed, suits may be brought on the several parts, *in* a Magistrate's Court.

## LEGAL DECISION.

Two grounds of error are assigned in this petition for *certiorari :*

1st. That a Justice's Court is not a Court of Record : and that
in as much as the Charter of the Bank which filed this petition, pro-
vides, that it shall be suable in Courts of Record, no jurisdiction can
be legitimately entertained by the Justices of the Peace, against
whom this complaint is made.

2nd. That the plaintiff, in the case below, commenced several
distinct suits, at one and the same time, to one and the same term of

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

the Court, on several demands, exceeding in the aggregate the juris-diction of the Court, which might have been embraced in one action, in the Superior or Inferior Courts; and that, for this reason, the Court below should be ousted of jurisdiction in the premises, and the plaintiff forced to sue, if at all, in the Superior or Inferior Court, of the County, which are Courts of Record.

The facts stated in the petition are admitted.    Is the Court of the Justices of the Peace, in this State, a Court of Record?   This has long been, and still is, a vexed question in Georgia.   "A Court of Record is that where the acts and the judicial proceedings, are enrolled on parchment, for a perpetual memorial and testimony; which rolls of Court are called the Records of the Court, and are of such high and supereminent authority, that their truth is not to be called in question : for it is a settled rule and maxim, that nothing shall be averred against a Record, nor shall any plea, or even proof, be admitted to the contrary.   And if the existence of a Record be denied, it shall be tried by nothing but itself; that is, upon the inspec-tion whether there be any such Record or no ; else there would be no end of dispute.   But if there be any mistake of the Clerk, in making up such Record, the Court will direct him to amend it.   All Courts of Record, are the King's Courts, in right of his Crown and Royal dignity, and therefore no other Court hath authority to fine and imprison ; so that the very erection of a new jurisdiction, with the power of fine and imprisonment, makes it a Court of Record." *Black.* Com. 3 vol. p. 23, 24.   " Record, *Recordum,* is a memorial, or remembrance in rolls of parchment, of the proceedings and acts of a Court of Justice, which hath power to hold plea, according to the course of the Common Law, of real or mixed actions, or of actions *quare vi et armis,* or of personal actions, whereof the debt or damage amounts to forty shillings, or above, which we call Courts of Record, and are created by Parliament, letters patent, or prescription.   But, legally, records are restrained to the rolls of such only which are Courts of Record, and not to the rolls of Inferior, nor any other Courts, which proceed not *secundum legem et consuetudinem Angliæ.*"— 3 *Coke.* Litt. 322, 323.   Tested by these definitions, the Courts of Justices of the Peace, in this State, are not Courts of Record.   They do not enroll on parchment (or on paper) their acts and proceedings— do not hold plea, according to the course of the Common Law, of

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

real or mixed actions, or of actions *quare vi et armis*, nor did they originally possess jurisdiction of debts exceeding forty shillings. The slight increase in the number of shillings, which may be now demanded in these Courts, can have effected no change in their legal natures. I have said that they originally could take cognizance of debts less than forty shillings only. The country is much indebted to the recent labors of the presiding Judge of the Southern Circuit, (the Hon. C. B. Cole,) on this subject. He has traced back the Courts of the Justices of the Peace, in this State, to the old Courts of Requests, of London, or the Court of Conscience, as it was more freqently called.

See the case of the *Monroe Rail Road and Banking Company* vs. *Scott, and others*, published in the Federal Union, of the 22nd March last. Bacon says of this Court: " There is also the Court of Requests, which is called the Court of Conscience, and is held before certain Commissioners, at Guildhall, and was established for recovering small debts, under forty shillings, but now raised to debts not exceeding five pounds."—2 vol. *Bac.* Abrid. 546. This Court, all the authorities agree, was not a Court of Record.

The Act of the Legislature of this State in which the title or appellation of this old jurisdiction, the Court of Requests of London, or the Court of Conscience, was changed to the one now in use, viz. the Justices' Courts, was passed in 1789. The 4th Section of that Act, provides, " That the Justices of the several counties, or any one or more of them, shall have authority and jurisdiction, to hear and determine all suits, for any debt or liquidated demand, due by judgment, specialty, or account, for any sum or sums of money, not exceeding five pounds sterling, by petition, in a summary way, without the solemnity of a Jury. And the said Justice, or Justices, is, and are hereby, authorized to give judgment ; and ten days after giving such judgment, award execution thereon, and not before."— *Watk.* Dig. 401. A popular error on the subject of the legal nature and constitution of Courts of Record, flows from the fact that the enrolling of their acts and proceedings on parchment, (or on paper,) is found very generally to obtain in Courts of Record, and may be regarded as a common and somewhat characteristic feature in them. It is taken as true, to some extent, on the faith of this fact, that all

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

Courts, whose proceedings are attested by written evidence, are Courts of Record.    The authority of Lord Coke has just been quoted to the contrary.    " But legally, records are restrained to the rolls of such Courts as are Courts of Record, and not to the rolls of Inferior, nor any other Courts, which proceed not *secundum legem et consuetudinem Angliæ.*"    Indeed, some Courts of very high authority and extensive jurisdiction, are not technically and legally Courts of Record.

" There are several of the King's Courts not of record—as the Court of Equity in Chancery, the Courts of Admiralty," &c.—Note 151 to 3 vol. *Black.* Com. 25.    4 Inst. 84.    " The technical notion of a record is restricted to the rolls of such Courts, only as proceed according to the course of the Common Law."    The Court of Request of London, of which the Justices' Courts of this State, are but a modern version, was not of Common Law origin.    It was created by the King and Council, in the reign of Henry VIII.    It was confined, too, at its creation, exclusively to the city of London.    Its proceedings were not by writ and plea, but by summons or warrant. The mode and character of proof were variant from the Common Law—the parties themselves were examinable before the Commissioners.    Lastly, the decision of the Commissioners was final and conclusive between the parties, without the intervention of a Jury. Our own Justices' Courts, by their present and proper appellation as such, for a long time proceeded " without the solemnity of a Jury." The provisional and limited right of trial by Jury, of five men, which now exists in those Courts, is of comparatively recent date. It is not the Common Law right of trial by Jury, by any means. Blackstone, speaking of that mode of trial, says, that it is " a trial that has been used time out of mind in this nation, and seems to have been coeval with the first civil government thereof."—3 vol. Com. p. 350.    And again, at p. 351, same vol., he proceeds : " when therefore an issue is joined, by these words, and this the said A. B. prays may be enquired of by the Country," or, " and of this he puts himself upon the Country, and the said C. D. doth the like," the Court awards a *venire facias,* upon the roll, or record, commanding the Sheriff, " that he cause to come here on such a day, twelve free and lawful men, *liberos et legales homines,* of the body of this county, by whom the truth of the matter may be better known, and who are

neither of kin to the aforesaid A. B., or the aforesaid C. D., to recognize the truth of the issue between the parties." I am not deciding, whether the subject of Great Britain, in all cases, and as a matter of course, was entitled to this mode of trial. I am simply defining the right of trial by Jury, as it was usually enjoyed from the earliest age of English jurisprudence, in the case of an issue, joined in civil causes, and in the exercise of which in the manner just pointed out, may be regarded as a correct test, or example, of the ordinary course of it. Certainly the right to appeal from the formal and regular adjudication of an issue of facts, by a single Magistrate, to a Jury of only five men, on terms with which one may, or may not, be able to comply, as provided in the Justices' Courts of this State, is not to be placed upon the footing of the trial by Jury, as I have shown it to exist by the Common Law. These Courts, then, are not, either in their origin, or in their mode of proceeding, "according to the course of the Common Law."

The Act of the Legislature, passed in 1809, (see *Prince's* Dig. 501,) has been read by the counsel for the defendants, in *certiorari*, and relied upon, as constituting them Courts of Record. "Each Justice of the Peace, in the State, shall keep a fair and legible book of entry of all civil proceedings, had before them, for the recovery of debts." If this Act is to be understood, as constituting them Courts of Record, the fact, at least, that they were not so before the passage of the Act is gained. And it may be well asked, what reason existed, at the time of the passage of the Act, for making them Courts of Record, which did not exist from the beginning? The Act itself furnishes no additional reason—it does not increase their jurisdiction, or in the slightest manner allude to the subject of their jurisdiction. The effect of this reference is somewhat weakened by the fact, already found to exist, that it is not the matter of preserving written proof of what takes place in a Court, that renders such Court one of Record, in the eye and contemplation of the Law. But let the language of the Act cited be considered : " Each Justice of the Peace, in the State, shall keep a fair and legible book of Entry (not a book of Record) of all civil proceedings," &c. And again : " in all cases where any Justice of the Peace in this State shall resign, or remove without the limits of the district, for which he shall have been appointed, it shall be the duty of the Justice to deliver the said book,

or a fair copy thereof, to his successor in office, within sixty days after he may be commissioned, or deposite the same with the Clerk of the Inferior Court."—See 2 Sec. of the Act cited. It is full compliance with the statute, to deposite "a fair copy of this book, with the successor, or with the Clerk of the Inferior Court"—and this, too, at any time within "sixty days" after the successor is commissioned: in the mean time, the original may be legitimately destroyed. Are these entries, thus to be made, and transmitted by the Magistrates, the "rolls on parchment," "the perpetual memorials" of a Court, "whose proceedings are according to the course of the Common Law," which the old Law writers, from whom I have quoted, understand to be records? But it is contended, that the Justices' Courts, in this State, are embraced within that portion of Judge BLACKSTONE's definition of a Court of Record, which refers to the power to fine and imprison. And to this point, the Act, authorizing the Justices to fine and imprison for contempts of Court, is read. The allusion made by BLACKSTONE and other Law writers, in popular use, to this subject, is well calculated to mislead. The description of cases to which the power of fining and imprisoning must apply, in order to bring the Court within the rule, or principle, relied upon, must be something more than the simple power of fining and imprisoning for contempts of Court. It must be the authority to take cognizance of crimes, for the commission of which, the offender is liable to indictment or prosecution, and for which, if convicted, he is punishable by fine and imprisonment, under the public Law.—See the cases cited by BLACK. and others, *Groenvelt* vs. *Burwell*, 1 *Salk.* Rep. 200. The right to punish for contempt, by fine or imprisonment, is a wholly different one, and is enjoyed equally by all Courts, whether they be Courts of Record, or Courts not of Record—without this power, indeed, it is obvious that the transaction of business by the Court, would be practicable only at the pleasure of the bystanders. "For contempts in the face of the Court, Courts not of Record may commit."—2 *Bac.* Abridg. 499. 1 *Coke's* Eliz. 581. 2 *N. & McC.* 110. 2 *Bay's* Rep. 1.

The practical difficulties in the way of holding these Courts to be Courts of Record, are not less formidable. The fact that records, as matter of evidence, import absolute verity, and can neither be added to, nor taken from, by other testimony, makes it important that they

be complete and perfect in themselves. They should of course ascertain, and define, with truth and accuracy, what takes place between the parties to them : This, "that there may be an end of disputes." Now, what are the facts in reference to the proceedings of Justices' Courts in this State? They commence suit by summons or warrant, which discloses no cause of action. The defence, on the other hand, is not, in a large majority of cases, even committed to writing at all, and if it be so, is usually without the necessary form and certainty in Law. No regular issue is joined, and the final disposition of the cause is exhibited and shown by certain meagre and laconic entries, made by the Magistrate who try the case, and a majority of which are perhaps in figures. So far from being full and complete in themselves, and so far from being final and conclu- clusive in their nature and effect, they may, with more propriety, be said for all legal purposes, to settle, substantially, nothing at all. Other consequences, scarcely less embarrassing, both to these Courts, and others, into which their proceedings may find way, would come, of holding them to be Courts of Record ; but it is considered not material to pursue them. Views similar to these obtain in our sister States. These Courts are, very generally, if not uniformly, held not to be Courts of Record—and this, too, in some instances in which they enjoy a much more extensive jurisdiction than they do in Georgia.—*Taylor* vs. *Turner*, Ala. Rep. 204. *McGehee* and *Rich- ardson* vs. *Sheffield*, 3 *Stew.* and *Port.* 351. *Posson* vs. *Brown*, 11 *Johns.* Rep. 166. *Hutson* vs. *Lowrey* and *Neville*, Virg. Cases 2 vol. 42 *Metc.* and *Perk.* Dig. 617—which refers to 1 *Tyler* 450 ; 2 *Chip.* 90. The first ground taken in the petition for *certiorari*, is sustained.

2. In order to pass, with correctness and propriety, on the second assignment of error, in the petition, involving, as it does, the question and doctrine of consolidation of actions, it is important to ascertain in what light the jurisdiction of these Courts is to be viewed under the Law—in other words, to define whether they are to be favored, or to be not favored.

" Nothing shall be intended to be within the jurisdiction of Inferior Courts, but what is expressly alleged."—2 *Bac.* 393. 1 *Chit.* Plead. 250. 4 *Dall.* 8. 4 Mass. 641. " They are strictly confined to the

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

powers given"—such Courts must not assume constructive powers, that is, powers not literally given, or necessarily consequent upon those given."—2 *Bac.* 396.  1 *Bayl.* Rep. 437.  4 Mass. 641.

The rule is still more exacting, when applied to Inferior Courts not of record, and of very limited jurisdiction.  " Particular jurisdictions, derogating from the jurisdiction of the Common Law, are to be taken strictly."—*Metc.* and *Perk.* Dig. 629—which cites 1 *Chip.* 37.  This principle is both a rational and a benevolent one : It is based not only on the supposed diminution of chances that any given cause of action will fall within the scope of the authority of a very limited jurisdiction, but on the graver and more weighty consideration, that the legal rights of suitors, are not so likely to be protected, and awarded to them in the Courts of inferior and restricted jurisdiction, as in those more comprehensively and liberally endowed. Certainly, in point of abstract weight, the citizen who is urging or resisting a demand, however small, is as much entitled to be heard before a tribunal, possessing the knowledge and means necessary to do him effectual justice, as is he who is engaged in a contest involving a larger amount.  But as a matter of social policy and convenience, and to effect certain other desirable objects, the smaller demand is exposed, with less reluctance, to the greater hazard.  It has ever been deemed wise and prudent, however, by the department of the government, which is charged with the execution of the Laws, to restrict rather than extend, as a matter of construction, that legislation which goes on a compromise of the security of rights.  Hence the jealousy with which the jurisdiction of Inferior Courts, has ever been watched and guarded.

To return more immediately to the point before us :  As a matter of discretionary humanity to defendants, even in the Superior Courts, " when the plaintiff has two causes of action, which may be joined in one action, he ought so to proceed ; and if he bring two actions, he may be compelled to consolidate them, and to pay the costs of the application"—(1 *Chit.* Plead. 180 : 2 Term. 639.  *Tidd's* Prac., 8 edi., 664.  *Gould's* Plead., 4 Chap., 103)—" For the institution of several suits, when all the ends of justice might have been attained by one, is considered oppressive."—*Gould's* Plead., 4 Chap., 103. When the effect of consolidation is to oust an inferior tribunal, in

which the trial by Jury does not exist, and where no record is kept of what transpires, and to bring the parties before a jurisdiction in which the orderly and benign rules, and cautious course of proceeding of the Common Law takes place, can the motion to compel consolidation be weakened?—Must it not, under the principle already established, be stronger? It should so seem.

When, therefore, several suits have been commenced, by the same plaintiff, against the same defendant, at the same time, in a Court not of Record, on several causes of action, which, in the aggregate, exceed the jurisdiction of such Court, and which, in their nature, are capable of being united in the same action, I take it to be Law, that the Superior Court, which is charged with the superintendency of such inferior tribunal, is bound, on the application of the defendant, to arrest the suits below, and compel the plaintiff, either to sue in the higher Courts, or to abandon litigation. "If there be several contracts between A. and B., for divers sums, each under the jurisdiction of an Inferior Court, but amounting, in the whole, to a sufficient sum, to entitle the Superior Courts to jurisdiction, they shall be sued for in the Superior Courts, and not in an Inferior Court, which is not a Court of Record."—*The Monroe R. R. and B. Co.* vs. *Scott and others*: Fed. Union, 22d March. 1 *Vent.* 65; *Mod. Cas.* 90. 1 *Vent.* 73; 2 *Kirb.* 617. 2 *Roll.* Ab. 280; 6 *Bac. tit.* Prohib.

The second ground of error is likewise sustained. I might here dismiss a case which has been very elaborately discussed and considered.—But justice to the interest of the country requires, that I go further, and dispose of another point incidentally connected with this subject, and which is daily presenting itself to me in petitions for *certiorari*. I refer now to the Act of 1811, a leading object of which was to extend the jurisdiction of the Justices' Courts, to certain newly supposed cases. This Act is reported in *Prince's* Dig. 501.

The first section is in these words: "That from and immediately after the passage of this Act, it shall and may be lawful for any person or persons, who has or have, in his, her or their hands, any bond, note, or account, for any sum exceeding thirty dollars, and the amount of which has been reduced by any payment or payments to a sum under thirty dollars, and such payment or payments are

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

endorsed on the back of said bond or note, or when any bond, note or account, or other agreement, (gaming debts excepted,) which in its original exceeds the sum of thirty dollars, but has been reduced by bond, or bonds, note or notes, although of equal date, and payable at the same period, to a sum or sums of or under thirty dollars, then, and in every such case, it shall and may be lawful for every person or persons who has or have in his, her or their hands any such bond or bonds, note or notes, or accounts, as aforesaid, to bring suit thereon in the Magistrate's Court of the district where the said debtor or debtors may reside, and the Magistrate before whom such suit is brought may give judgment, for whatever appears to be due upon such bond or bonds, note or notes, or account, provided the said judgment does not exceed on any one trial the sum of thirty dollars."
In order to understand the reason which led to the passage of this Act, as well as to enable us to dispose of it on legal principles, it is necessary to refer to the jurisdiction of Justices' Courts, as it at that time found place in the Constitution of the State. The 5th Sec. of the 3d Art. of the Constitution, as it then stood, was in these words: " The Justices of the Peace shall be nominated by the Inferior Courts of the several counties, and commissioned by the Governor ; and there shall be two Justices of the Peace in each Captain's district, either or both of whom shall have power to try all causes of a civil nature within their district, when the debt or liquidated demand, does not exceed thirty dollars, in such manner as the Legislature may by Law direct."—See the Constitution of 1798 ; *Watk.* Dig. 40. This provision remained a part of the Constitution until the year 1819, when the limitation contained in it was removed by an amendment.— (see *Lam.* Dig. 177.) The validity of the Act of 1811, however, must still be tested by reference to the Constitution, as it existed at the time the Act was passed. This is obvious. With this clause of the Constitution in view, there is no difficulty of understanding the motives and intentions of the movers of the Act in question. It was to enable parties to effect an escape, from a constitutional restraint, or in legal parlance, to perpetrate a fraud on the Constitution. The policy of the Act is apparent,—to enlarge by indirection the powers of these lesser Courts. This, the Legislature had no constitutional authority to do. It is clear, that such object could not have been accomplished by direct means, and it is a rule in Law, as it is a maxim in morals, that what cannot be done directly, cannot be done

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

indirectly. If the Constitution limited the jurisdiction of these Courts, at the time that Act was passed, to the sum of thirty dollars, (and I have shown that it did,) neither individual suitors, nor the Legislature, could help them to more.—They must rest on their grant. It is clear, that the effect of that Act, if it is to be executed, is to remove at once all restraint; or limit on the jurisdiction or these Courts, so far as the amount. or size of the demands of which they are to take cognizance, is concerned. Debts of any and every imaginable size, are thus brought within their embrace. A. owes B. one thousand dollars, for which B. holds A.'s note. All will agree, that this demand, while in that form, could not be litigated in the Justices' Courts, even although the parties to the debt should expressly consent to it. Yet the Act proposes to enable them, by the shallow artifice of substituting forty small notes, for twenty-five dollars each, "although of equal date, and payable at the same period," and although sued in actions returnable to the same term, to elude the constitutional impediment, and get rightfully into a Court of a jurisdiction limited, in the very face and by the plain letter of the Constitution, to demands not exceeding thirty dollars. The proposition, in a legal point of view, is extravagant. In the case put, what are the small notes but representatives of connected portions of the same contract ? They do not, and cannot, in such circumstances, represent independent contracts. There are, in fact, in the case supposed, no independent contracts to be represented. The debt is equally before and after the division of the large note, in the hands of the contracting parties, a single debt of one thousand dollars, and the parties, with the motive, and for the purpose supposed, can make of it, so far certainly as the constitutional question is concerned, nothing more nor less. It is no answer, that the defendant, having voluntarily agreed to give the creditor this advantage, ought not to be permitted to profit by a breach of faith. The reply is, that the jurisdiction of the Courts of Justice, is a matter to be determined by the authority which creates them, and can be neither enlarged nor abridged, at the will or pleasure of individuals. On objects beyond the boundaries set to their authority, they cannot, on the mere motion of suitors, or on any other pretence, legitimately embark the official means and agencies with which they are clothed.

Apart, then, from all considerations of mere agreement or con-

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

sent, on the part of individuals, and as a matter of obligation and good conscience, on the part of the Courts themselves, they are compelled, in all circumstances, to abstain from other powers than those delegated to them. To this point, the authorities are numerous and clear.

"A deed executed for the purpose of giving jurisdiction to the Federal Court, will not be countenanced, so as to sustain the jurisdiction."—1 *Wash.* C. C. 70.

"Confessing a judgment in a Justice's Court, will not give it jurisdiction."—3 *Caine's* Rep. 129.

"Consent of parties cannot confer jurisdiction in a matter that is excluded by Law."—3 *McCord* 280. 1 *Const.* Rep. 478; *Minor's* Rep. 65. 7 Port. 37. *Charlton's* (*Rob't. M.*) Rep. 298. (by Judge LAW, in 1830;) *Metc. and Perk.*, in their Dig. of American cases, cite to the same point—these additional authorities, to which I have not access, and on which I do not, therefore, rely; 1 *Breese* 32; 2 *Yerg.* 441; 3 *Litt.* 332; *J. J. Marshall* 476; 1 *Bibb.* 263. 6 *Litt.* 303; 5 *Monr.* 388. *Kirby* 111. *Wright* 21, 176. A few cases, bearing more immediately upon the true nature of the Act of 1811, and the construction proper to be placed upon it, and sustaining fully the decision that I am now making, shall be quoted. "A Magistrate, bound to act within his district in civil cases, and no where else, cannot sustain a jurisdiction beyond thirty dollars, and such must be the entirety of the demand, as not to be susceptible of any division for the purpose of giving jurisdiction, upon distinct citations to different terms."—*Charlton's* (*Rob't. M.*) Rep. 214. 15 *Johns.* 229. 16 *Johns.* 121. "A. owes B. eighty dollars, and gives four several single bills for twenty dollars each, payable at one day, and at one, two, and three months after date, respectively; and after the last is due, B. obtains warrants from a single Magistrate, to recover these several sums; A. may obtain from the Superior Court a writ of prohibition to prevent the Justice from proceeding, because the Justice has not jurisdiction in the cases; all the notes constituting only one debt."—2 vol. Virg. Cases, 42. Can a case be imagined, more immediately in point? It cannot be important to cite other authorities than these—numerous and respectable, and as I may add, uncontradicted, as they are.

[The Planters & Mechanics Bank of Columbus vs. Chipley, Wiley and others.]

Yet I do not wish to be understood as saying, that a debt originally exceeding thirty dollars, may not be reduced below that sum by actual payments, so as to be brought within the jurisdiction of the Justices' Courts, nor that the parties to the debt above thirty dollars, may not legitimately sever it, for the purpose of negotiating a part or parts of it, and for the purpose of giving different days of payment, so that the same be bona fide, and not merely colorable, and with a view to defeat the Constitution ; and when so severed, different suits may not be brought in the Magistrates' Courts, on the several portions into which the original demand may have been divided.    These are all and useful rights of property, which were recognized from the beginning ; which needed no confirmation by the statute, and which should by no means be arrested from the citizen.    But, so far as the statute is relied upon to justify the division of an entire debt, into parts, with the simple view of giving jurisdiction, as I have shown, it must be deemed to be nugatory and void.

It is not to be denied, that this decision is to work a very great retrenchment of the jurisdiction of the Justices' Courts, as heretofore taken and exercised in this State.    Impressed with the consciousness of this, I have bestowed on the several points disposed of by this decision, a degree of labor and investigation commensurate, as I hope, with the extent of the interest, and the consequent responsibility, involved.    A protracted and careful examination of the whole subject, has led me to the conclusion that the decision is demanded on principle, as I have shown it to be in literal pursuance of authority.

MARSHALL J. WELLBORN, j. s. c. c. c.

HOLT & ALEXANDER, for the Plaintiffs, in *certiorari*.
S. A. BAILEY & A. H. COOPER, for Defendants.